## Commonwealth v. Winn

*James R. Cascio, Assistant District Attorney,* for Commonwealth.

*Wilber H. Beachy, III, Public Defender,* for defendant.

COFFROTH, *P.J.,* February 8, 1977—This case is before the court en banc on defendant's motions in arrest of judgment and for new trial following his conviction for manufacture of marijuana, a controlled substance.

The sole issue in the case is whether the mere growing of marijuana constitutes manufacture as a matter of law under the provisions of The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, 35 P.S. §780-101 et seq. The trial judge instructed the jury that it does, the defense contends that it does not.

The term "manufacture" is defined in section 2(b) of the act, 35 P.S. §780-102(b), in relevant part

as follows: " 'Manufacture' means the production, preparation, *propagation,* compounding, conversion or processing of a controlled substance, other drug or device . . ." (Emphasis supplied.)

The word "propagation" is a common word of nontechnical meaning, and is given no specialized meaning or definition in the statute; accordingly, it is to be construed according to its common and approved usage: 34 P.L.E. 129, §75; Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. §1903(a). According to Webster's New International Dictionary (2d ed., Merriam 1953), the meanings of propagate and propagation include "to cause to continue or multiply by generation, or successive production, as to propagate a species of trees." Webster's New Collegiate Dictionary (Merriam 1960) contains a similar definition, using the example "the *propagation* of apple varieties." See also Webster's Third International Dictionary (Merriam 1966). It necessarily follows that the term manufacture as used in the act includes the planting and growing of marijuana plants; and upon a finding that defendant did so, he is properly convicted of the offense of manufacture of a controlled substance. Accord, Com. v. Haffly, 17 Adams 69 (1975), Keller, J.

The defense further argues that the definition of *marijuana* in section 2(b) of the act implies that manufacture must involve derivation from the plant of a resin, compound, salt, derivative or mixture, which means more than mere cultivating and growing of the plant. The definition of marijuana is as follows:

" 'Marijuana' consists of all forms, species and/or varieties of the genus Cannabis sativa L., whether growing or not; the seeds thereof; the resin ex-

tracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin; but shall not include tetrahydrocannabinols, the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, cake, or the sterilized seed of such plant which is incapable of germination."

We see no merit in this argument. The definition of marijuana expressly covers "all forms, species and/or varieties . . . whether growing or not . . ." Moreover, the inclusion of cultivation and growing within the meaning of the term "manufacture" is explicit and clear as above explained.

The defense further contends that one who grows marijuana without further processing or delivery, and without intent to process or to deliver, can be guilty only of the offense of possession, a misdemeanor under section 13(a)(16) of the act; and if the amount grown is a small amount of marijuana (30 grams or less), it is still a misdemeanor under section 13(a)(31) provided the other requisite facts are present. It is contended that for such conduct the legislature did not intend the severe consequences of a felony conviction.

We cannot accept this' argument. Although the consequences of a felony conviction are severe, for growing a small amount of marijuana for personal use or for distribution without sale, compared with mere possession of a small amount acquired but not grown by defendant to which section 13(a)(31) is applicable, there is another side to the coin, as mentioned in Com. v. Haffly, supra, at p. 83: "The net

effect of such a forced construction would be that acres of marijuana or opium poppies could be planted, cultivated, harvested and stored; indeed perhaps processed, with no greater threat than prosecution for the misdemeanor of possession."

Although we do not fully accept the phrase "indeed perhaps processed" in the foregoing quotation, it is nevertheless clear that defendant's contention is a "forced construction" of the plain language of the statutory definition of "manufacture" in the act which cannot be construed away.[1]

## ORDER

Now, February 8, 1977, the motions in arrest of judgment and for new trial are denied. Defendant shall be scheduled for sentencing.

---

1. The testimony in this case also established that the usual and simplest method of homemade conversion of marijuana plants into useable marijuana is by processing it into a tobacco-like form for smoking, by drying the mature plants, removing the stems and crushing the dried leaves into granular form. Such "conversion or processing" is a form of manufacture under the statutory definition, and the offense of possession with intent to manufacture was also submitted to the jury as a possible alternative verdict. The jury found defendant guilty of manufacture only.